# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 10-17 (PJS/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Craig Leslie Anderson, | |
| Defendant. | |

Jeffrey M. Bryan, Carol Kayser for the Government.
Manvir K. Atwal for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on February 24, 2010 on Defendant's Motion to Suppress Evidence [#17]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing, the Court received testimony from Probation Officer Carrie Klingenberg, Deputy William Asher Murray and Investigator Bradley Nestegard.

The Government submitted one exhibit into evidence during the course of the hearing. Government Exhibit 1 is a copy of the Minnesota Department of Corrections conditions of release papers signed by Craig Leslie Anderson. Defendant Anderson submitted four exhibits into evidence during the course of the hearing. Defense Exhibits 1-4 are photos of the Budget Host Prairie Winds Motel in Jackson, Minnesota and the Defendant's room at the hotel. For the reasons which follow, this Court recommends Defendant's motions be denied.

## I. BACKGROUND

In November 2009, Defendant Craig Leslie Anderson was a parolee under the supervision of Probation Officer Carrie Klingenberg. (Tr. 5:8-5:16.) As a Minnesota Department of Corrections parolee, Anderson was subject to certain conditions of release. (Gov't Ex. 1.) Klingenberg had reviewed the conditions of release with Anderson after his release from prison in mid-September 2009. (Tr. 11:9-11:10.) One of the conditions of release was a prohibition on the purchase or possessions of firearms or dangerous weapons. (Gov't Ex. 1.) Another was an agreement to submit at any time to an unannounced search of Anderson's person, vehicle, or premises. *Id.*

On November 18, 2009, Klingenberg received information that Anderson had been overheard at a bar the evening of November 17, 2009 stating if he did not receive certain paperwork he was waiting for relating to his family home, Anderson was going to show up armed and go out "in a blaze of glory." (Tr. 16:15-16:25;43:19-44:12.) This information was relayed to Klingenberg by Jackson Police Investigator Bradley Ray Nestegard. *Id.* Nestegard also informed Klingenberg that when Anderson had been stopped by a Minnesota state trooper earlier on November 17, 2009, Anderson told the trooper that he had been out hunting. (Tr. 44:13-44:23.) Based on Nestegard's report and believing it likely that Mr. Anderson was violating the conditions of his release by possessing a firearm, Klingenberg requested an arrest warrant for Mr. Anderson in the early afternoon of November 18, 2009. (Tr. 8:17-9:12; 17:7-17:9, 20:9-20:15.) In response to Klingenberg's request, the Hearings and Release Unit of the Minnesota Department of Corrections issued an arrest warrant within 10 to 15 minutes of Klingenberg's phone call. (Tr.18:2-19:25.)

At approximately 6 or 7 p.m. on November 18, 2009, Mr. Anderson was arrested in his

room at the Budget Host Prairie Winds Motel in Jackson, Minnesota by a high-risk entry arrest team known as a HEAT team. (Tr. 12:2-13:11; 33:10-33:16.) Less than a minute after the HEAT team exited the room with Anderson, Deputy William Asher Murray took custody of Anderson, securing him in the back seat of Murray's squad car. (Tr. 24:14-25:16.) Murray then asked if Anderson would consent to a search of Anderson's motel room and vehicle. Although Murray advised Anderson that a search was necessary due to concerns about weapons in the motel room, Anderson refused to consent to a search. (Tr. 25:18-26:20.) After Anderson refused consent, Murray closed the squad door and told fellow officer Shaffer to watch Anderson while Murray joined the police chief and Klingenberg in a discussion approximately 30 yards away from the motel room door and the nearby squad car. (Tr. 26:21-27:6.) During this discussion, the law enforcement officers decided to search Anderson's room under the authority of his conditions of release, which allowed unannounced searches of Anderson's residence at any time. (Gov't Ex. 1; Tr. 29:5-29:25.)

After the group discussion ended, but before a search began, Shaffer approached Murray as Murray was walking back toward the motel room. (Tr. 30:1-30:20.) Murray testified that Shaffer informed him that Anderson had told Shaffer, "You can go ahead and search. There's no weapons in there." *Id.* Murray further testified that after receiving this information from Shaffer, Murray went over to the squad car, opened the back door, and said to Anderson, "Craig, Officer Shaffer advised me here that you said that we could now search the motel room; is that correct?" (Tr. 31:1-31:5.) Murray testified that Anderson replied, "Yeah. As long as I get to see my arrest warrant, you can go ahead and search. There's no weapons in there. Go ahead." *Id.* Murray testified that he again confirmed Anderson's consent by asking him a second time whether he

3

could search, and that Anderson replied, "Yes you can. There's no weapons in there." (Tr. 31:21-32:5.) Murray testified that at the time Anderson consented to the search Anderson was coherent and did not appear intoxicated. (Tr. 32:6-33:6.)

After Anderson consented to a search, law enforcement officers began searching the motel room. Murray searched the main living area, and did not find any weapons or firearms. (Tr. 40:2-41:21.) Investigator Nestegard also participated in the search, first searching the bathroom and then moving to the closet in the bedroom area. (Tr. 45:12-45:16.) Nestegard found five 12 gauge shotgun shells in the pocket of a blaze orange hunting jacket hanging in the closet. (Tr. 45:21-46:14.) Nestegard testified that without touching the pocket, without lifting a flap, and without placing his hand inside the pocket he could see the individual shells sitting in loops within the pocket. (Tr. 46:15-47:1, 50:6-50:23; 52:3-52:5.) Nestegard took the shotgun shells into evidence but did not take the jacket into evidence. (Tr. 50:24-51:3.) Anderson was subsequently charged as a felon in possession of ammunition. (Doc. No. 1.)

## II. ANALYSIS

It is fundamental that the Fourth Amendment does not prohibit a warrantless search of a residence where police obtain a resident's voluntary consent. *U.S. v. Kelley*, 594 F.3d 1010, 1013 (8th Cir. 2010)(citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The scope of a resident's consent is limited by the terms of its authorization, which are in turn measured by a standard of objective reasonableness. *Walter v. United States*, 447 U.S. 649, 656 (1980) ("When an official search is properly authorized-whether by consent or by the issuance of a valid warrant-the scope of the search is limited by the terms of its authorization."); *United States v. Siwek*, 453 F.3d 1079, 1085 (8th Cir. 2006) (objective reasonableness standard); *see also United*

4

*States v. Urbina*, 431 F.3d 305, 310 (8th Cir. 2005). The Court may determine the scope of the consent by determining what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect." *U.S. v. Siwek*, 453 F.3d 1079, 1084-85 (8th Cir. 2006) (citing *Florida v. Jimeno*, 500 U.S. 248, 251(1991).

Anderson argues that his consent was limited in scope to a search for firearms, and that the search exceeded the scope of his consent. When Anderson voluntarily gave statements of consent to the effect of: "As long as I get to see my arrest warrant, you can go ahead and search. There's no weapons in there," and "Yes you can. There's no weapons in there," a typical reasonable person would have understood that he authorized *at least* a search for weapons within his motel room. Arguably, though, a typical reasonable person would have understood that Anderson authorized a general search of the motel room. Nevertheless, even if Anderson authorized a search for weapons and weapons only, it was objectively reasonable for Nestegard to search anything in the motel room in which a weapon might be concealed. *United States v. Alcantar*, 271 F.3d 731, 738 (8th Cir. 2001) ( "[W]hen an officer receives consent to search for an item that can be easily hidden, the officer may conduct a sufficiently thorough search to find those items."). The Court finds that it is objectively reasonable to believe a weapon could be hidden within clothes in a closet. Further, the officers here were not searching for a firearm or weapon of any particular size. A small firearm or parts of a larger firearm could reasonably be found within the pockets of a hunting jacket or in a container of comparable size. Additionally, the fact that the jacket in which the shells were found was a hunting jacket, combined with the officer's knowledge that Anderson had told a state trooper that he had been out hunting the day before, makes it even more likely that a firearm or its component parts could have been

5

concealed within Anderson's hunting jacket.

For the above reasons, the Court concludes that the search of Anderson's motel room remained within the boundaries of Anderson's consent. Accordingly, the motion to suppress must be denied.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence [#17] be **DENIED**.


DATED: March 26, 2010  *s/ Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 9, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **April 9, 2010** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.